## Union & Planters' Bank & Trust Co. *v.* Corley.

(Division B.   Jan. 12, 1931.)

[132 So. 78.   No. 29023.]

284

See, also, 132 So. 78.

286

J. C. Roberts, of Cleveland, Cutrer & Smith, of Clarksdale, and Louis C. Hallam, of Jackson, for appellant.

**Maynard, Fitzgerald & Venable,** of Clarksdale, for appellee.

Argued orally by **W. H. Maynard**, for appellant, and by **L. C. Hallam**, on plea in bar.

### ON THE PLEA IN BAR.

**Ethridge, P. J.**, delivered the opinion of the court on the plea in bar.

There was a suit by the Union & Planters' Bank & Trust Company against W. D. Corley to enforce by a specific performance a contract of sale of certain lands. It appears that in the contract sought to be specifically enforced there was a provision for payment of rent in case the contract of sale was not carried out. On the trial below the court held that there was no right to a specific performance of the contract, because a deed was not tendered showing a merchantable title during the year 1927, and the court decreed rent in accordance with the stipulation of the contract and denied the specific performance of the contract, from which an appeal is prosecuted to this court.

There was an agreement on the date the decree in the court below was rendered that Corley would pay the taxes on the place for the current year without prejudice to the right of the parties to appeal, and that, if the judgment was not reversed, he would be credited with the amount of taxes so paid upon the property involved as against any rent adjudged against him or that might be due. The plea in bar alleges that complainants ought not to maintain their appeal from the decree of the chancellor denying the right of the appellants to compel the appellee to specific performance under the contract of February 21, 1927, and dismissing the bill in that regard, because the appellee says that, after the rendition of the decree and before an appeal was taken by the complainants, to-wit, in January, 1930, the appellant took possession of said property in Le Flore county, Missis-

sippi, contracted to be conveyed to the said W. D. Corley in the said contract of February, 1927, and rented a part of the same out for the year 1930 to tenants at an aggregate rental of two thousand eight hundred dollars, for which said tenants executed to the appellants their notes; and that they also rented to one Williams about four hundred acres of said land at one thousand three hundred dollars for the year 1930, for which they received a rent note; and that, after the said Williams had planted a crop on the said land so rented by him, the water came up and overflowed the same and drowned his crop out, and he thereupon abandoned the land so rented by him. It was further alleged that the appellants are now in possession of the said lands, exercising rights of ownership over the same. It was further alleged that the appellants in December, 1929, or January, 1930, offered the said lands for sale to one C. C. Calhoun, who, on account of the fact that the lands overflowed every year, declined to take it; that they then offered the same for sale to Robert Funchess, but, after an examination of the same by the said Funchess, finding from the water marks on the trees that the same overflowed every year, he declined to buy, but offered to rent the same for the year 1930; that, by the acceptance of the benefits of said decree in going in possession of said lands and renting the same out and offering to sell the same, the appellants thereby waived the right to appeal from the decree.

The appellants answered that they ought not to be barred of their said appeal because in the latter part of 1929 they were informed by the manager of Corley, that Corley was going to abandon the said premises after the gathering of the crops for the year 1929, and that, realizing that the property would deteriorate in value and be abandoned by tenants and become less valuable as a plantation by being neglected in its cultivation, they employed a caretaker to look after the said premises for the benefit of all concerned and subject to the right of the

parties to the litigation pending on appeal, and that the agent was not authorized to sell and was only authorized to rent subject to the rights of the appellants and the appellee in the discharge of the appeal in the Supreme Court. They were advised by attorneys that it was necessary for them to take this course to mitigate the differences as far as possible, and that they acted in good faith upon said advice, and the property was handled in the manner stated for the benefit of all concerned.

The appellants have filed affidavits setting forth the facts in accordance with their reply to the plea while the appellee has filed affidavits tending to sustain the plea.

After a careful consideration of all the affidavits presented and the law governing the case, we feel that we should deny the plea in bar. The decree of the court did not specifically decree the right of possession, and the affidavits of the appellee tended to show that he recognized the right of possession. If it be true that Corley intended to abandon the place at the end of 1929 and so informed the appellants, or their agents or attorneys, then there would be no good reason to hold that appellants could not employ a caretaker and rent out the premises for the best interests of all concerned, during the pendency of the litigation, without forfeiting his right of appeal. To so hold would accomplish no good purpose, but on the contrary would cause one or the other litigants to suffer loss and injury. Before the plea in bar of appeal should be sustained, it must appear at least by a preponderance of the evidence that the appellants have taken a course of action inconsistent with the appeal, and accepted some benefits by the decree rendered in their behalf. We do not think the present case comes up to this standard, and the plea in bar will be denied, and the cause retained for a consideration upon its merits.

Plea in bar overruled.

## On The Merits.

**Ethridge, P. J.,** delivered the opinion of the court on the merits (after stating the foregoing facts).

There was much conflict in the evidence as to the facts in the case. The appellee refused to accept the title as tendered, and the court below refused to decree a specific performance thereof.

The law pertaining to specific performances is pretty well settled in this state. The facts in the record are very voluminous, and, as stated, there is much conflict in the evidence as to many portions of it. The only point, perhaps, that has not been settled in this state is whether a title by adverse possession, evidenced only by ex parte affidavits, is sufficient to show a marketable title which a court of equity will specifically enforce. The authorities in other states are conflicting upon this proposition. It appears that many states hold that a title by adverse possession is sufficient to sustain a suit for specific performance of a contract, but hold that the court requires proof, to show beyond a reasonable doubt the facts constituting such adverse possession.

In this case it is not necessary to decide whether proof of adverse possession not evidenced by some court proceeding establishing such title would answer the requirements for specific performance, for the proof in this case, conceding for that purpose that such title would answer if satisfactorily established, does not comply with the rule of establishing such title beyond all reasonable doubt. In 25 R. C. L., pp. 274-277, sections 75 to 78, inclusive, the law is well stated upon this subject and the authorities of different jurisdictions are referred to in the case notes under this section. Section 75, p. 275, says that:

"Specific performance of a contract for the purchase of land will not be decreed where the vendor cannot

show a clear title, but merely one concerning which there is a reasonable doubt, or one which is, in fact, defective. This is true unless the purchase has been made at the risk of the vendee as to the title, or the latter has agreed to accept such title as the vendor may be able to give. It is immaterial that it is doubtful whether the defect will ever incommode the purchaser. If there is any reasonable chance that some third person may raise a question against the owner of the estate after the completion of the contract, the court considers this a circumstance which renders the bargain a hard one for the purchaser, and one which it will not, in the exercise of its discretion, compel him to execute. And a purchaser, who has contracted for a good title, will not be compelled to accept a mere equitable title, of which he cannot avail himself in a suit at law, to recover the property, or to defend his possession, if necessary. But a bill for specific performance will not be dismissed merely because the title was not perfect at the commencement of the suit. A specific performance may be decreed, if it appears that a perfect title can be made to the purchaser at the time when performance is due. These general principles appear to apply also to the exchange of real estate.''

Section 76, page 275, under the head of ''Test of Sufficiency of Title,'' says that: ''While a purchaser cannot be compelled to take a doubtful title, he will not be permitted to object to a title on account of a bare possibility that it will prove defective. An objection to a title should have some merit in order to defeat the claim of the vendor to the specific performance of the contract of sale. It is not enough that the purchaser should have an honest doubt as to its sufficiency. It is only in cases where the court itself is in doubt as to the title that a specific execution will be refused on the ground that the title is not marketable. But though the court may entertain an opinion in favor of the title, if it is satisfied that that opinion may fairly and reasonably be questioned,

it will refuse specific performance. The standard test of the sufficiency of the title is its marketability, and equity will not actively interfere to compel the specific performance of a contract for the sale of land in favor of the vendor, if there is such uncertainty about the title as to affect its marketable value. Nor will a purchaser generally be compelled to take a title when there is a defect in the record title which can be cured only by a resort to parol evidence, or when there is an apparent incumbrance which can be removed or defeated only by such evidence. Specific performance will likewise be refused of a contract to purchase real estate where the defendant is entitled to an indefeasibile title, and there is doubt whether persons not made parties to the action may not have an interest in the property."

Section 77, page 276, says that: "As a general rule a court of equity will not force upon a vendee a title which he may be required to engage in litigation to defend, but it has been held in a number of cases that a title by adverse possession may be so clearly proved and be so free from doubt as to be a proper foundation for a decree for specific performance against the purchaser, in the absence of a contract for a perfect record title. It seems to make no difference that the title is based on adverse possession which must be proved by parol evidence, and it has been said that even the possibility that the former owner was an alien, or that he may have died leaving heirs disabled from asserting their rights, will not make the title doubtful. Specific performance of a contract of purchase will be decreed against a purchaser who has gone into possession and held it for many years, though the deed under which the vendor deraigns title has been lost. But, in such case, as the onus of proving such title rests on the vendor he must pay the costs. On the other hand the rule has been laid down by some courts that the specific performance of a contract for the conveyance of a good and sufficient

title to real property will not be decreed, unless the grantor can place in the hands of the grantee all the muniments of title, sufficient to enable him to make out a title in ejectment. And if a purchaser has contracted for a good title of record, a court of equity will not compel him to take a title depending upon adverse possession, although it may be a good title. Similarly where the contract called for a warranty deed the court has refused to consider as sufficient a warranty deed depending on parol evidence, on the general principle that a vendee will not be compelled to take a title which can be proved only by parol evidence."

It seems to us that, where there is adverse possession relied on to constitute a title, mere ex parte affidavits of owners of land, and a few other persons, would be insufficient. There is quite a difference, it seems to us, in compelling a party to accept a title which may be disputed by oral evidence, and the using of a title, either defensively, or offensively, in litigation between particular persons. The court ought not to decree specific performance where the title shown in the vendor depends upon oral proof, and about which witnesses might disagree, or the testimony might be lost by death or removal of the persons relied upon to establish that fact. If a vendee is to be compelled to take title to be established, as distinguished from one already established by proof of adverse possession, such proof should embrace affidavits or depositions of all the owners of the adjacent lands by which a large proportion of those who have lived in proximity to the land during the period of time relied upon testify overwhelmingly strong so as to leave no reasonable doubt that the title could be established should it ever become necessary so to do in a court of justice. In a case note on the marketability of a title in 57 A. L. R. at page 1267, the question is discussed as follows:

"It is also notable that the question presented to the court, on an application to compel a purchaser objecting to the title tendered to complete the purchase, is not the same as, it is where raised in a direct proceeding between the vendor and an adverse claimant. Where all the parties in interest are before a court of competent jurisdiction, they are concluded by the judgment pronounced, so long as it stands unreversed, however imperfectly the evidence of facts were presented upon which the adjudication was made, or, however doubtful the adjudication may have been in point of law. If the controversy involved a disputed question of fact, or the evidence authorized inferences or presumptions of fact, the finding of the tribunal makes the fact what it is found to be for the purposes of the particular case, although the evidence of the fact may be weak and, inconclusive, or although it is apparent that there are sources of information which have not been explored, which, if followed, might have removed the obscurity. The parties are nevertheless concluded in such a case, because they were parties to a judicial controversy before a tribunal constituted for the very purpose of deciding rights of persons and property, and before which they had an opportunity to be heard. But the court stands in a very different attitude when it is called upon to compel a purchaser to perform a contract of purchase, and he asserts that there are outstanding rights and interests which render the title doubtful. The objection may involve a mere question of fact or it may involve a pure question, of law upon undisputed facts. In either case it may very well happen that while, in a proceeding where all the parties interested are before the court, it will decide the matter upon the facts disclosed, nevertheless it will decline to pass upon it in a proceeding to compel the purchaser to take title. The reason is obvious. The purchaser is entitled to a marketable title. A title open to reasonable doubt is not a

marketable title. The court cannot make it such by passing upon an objection depending on a disputed question of fact, or a doubtful question of law, in the absence of the parties in whom the outstanding right is vested. They would not be bound by the adjudication, and could raise the same question in a new proceeding. The cloud upon the title would remain, notwithstanding the judgment of the court, whatever moral weight the decision might have. It especially would be unjust to compel a vendee to take a title, the validity of which depended upon a question of fact, where the facts presented upon the application might be changed on a new inquiry, or open to opposing inferences. There must doubtless be a real question and a real doubt. But, this situation existing, the vendee should be relieved.''

We think the above quotation has met the question pertinent to the decision of this case. The evidence of adverse possession tendered with the abstract was inadequate, even conceding that the title could be so established. E. M. Townes had purchased the land at different periods of time. A considerable portion of the land was wild or woodland not in cultivation. The evidence was very unsatisfactory as to whether it had been inclosed with a fence. There was a portion on which no evidence of fence was found, and the evidence that was offered that other parties had fences was very unsatisfactory.

On the trial of the cause the adverse claimants or persons who formerly held the title were not made parties, and were not before the court. An inadequate number of people signed affidavits, and the testimony of those who were before the court did not rise to any high degree of dignity and conclusiveness such as is required for this purpose.

We think, under all the authorities, that the evidence offered at the time the abstract and deed were tendered was utterly insufficient to establish satisfactorily adverse possession.

We also think that the evidence on the trial was insufficient when considered in connection with the disputed facts, and with the chancellor's finding. The question of what is considered marketable title has been elaborately considered by the courts of other states and collated in notes to 132 Am. St. Rep. at pages 991 et seq.; 57 A. L. R. 1253; 52 A. L. R. 1460; 7 A. L. R. 1166; 96 Am. St. Rep. 545.

One of the best definitions of "marketable title" is in the case note to 96 Am. St. Rep. 545, where it is said that:

"A good title means not merely a title valid in fact, but a marketable title which can be sold or mortgaged to a person of reasonable prudence," citing numerous authorities.

It is familiar with every person conversant with modern conditions that one valuable thing in owning property is the ability to secure loans of money upon it, on reasonable terms. It is not the mere peaceful possession of property, but such a title as can be readily sold to another who is willing to buy on reasonable terms, or which can be mortgaged to secure loans on reasonable terms from persons having money to lend.

We think the terms of the contract set in this case require that the appellants convey a merchantable title.

Under the proof as presented by the record, the chancellor was well warranted in holding that the appellants failed to furnish the appellee with a marketable title to the lands.

We think the contract set out constitutes a severable one between the Le Flore county and the Tallahatchie county lands. It is conceded that the title to the Tallahatchie county lands was defective, not marketable, and the relief sought is to specifically enforce the contract as to the Le Flore county land only, but the appellants failed to sustain the allegation of the bill and to show a compliance with terms of their contract. At

least, the chancellor was well warranted in so finding from the evidence, and the judgment is affirmed on the direct appeal.

We also find no error in the chancellor's decision upon the cross-appeal, and the decision on the cross-appeal is also affirmed.

Affirmed on direct and cross-appeal.