INZER, Justice:
This is an appeal by Barber Pure Milk Company from a decree of the Chancery Court of Harrison County which dismissed its bill of complaint seeking the recision of a contract for the purchase of certain real estate. We reverse and enter judgment here for appellant.
*410 On November 21, 1966, appellant entered into a contract with appellees, Jack Goldin and Agur Realty Co., Inc., for the purchase of certain real estate in Gulfport, Mississippi for a purchase price of $74,000. The Agur Realty Company was designated in the agreement as the agent of Jack Goldin, the owner of the land. The contract contains the following pertinent clauses:
(6) TITLE: The Seller is to furnish Warranty Deed and certificate of title from attorney or an abstract down to date. Reasonable time shall be allowed for examination of title. Should examination of title reveal defects which can be cured, the Seller hereby obligates himself (themselves) to cure same as expeditiously as possible, and to execute and tender Warranty Deed in accordance with the terms thereof.
(7) The Purchaser hereby represents that he has personally inspected and examined the above mentioned premises and all the improvements thereon and is satisfied therewith. The Purchaser further represents that no verbal or written representation or statement of any kind or nature except as set forth in his contract has been made to him (or her). * * *
(9) DEPOSIT: The Purchaser has deposited with AGUR REALTY CO., INC. $5,000, as earnest money. If the title is merchantable, this deposit is to apply on the cash payment. If the title is not merchantable and cannot be made merchantable within a reasonable time, the Seller is to return the earnest money to the Purchaser. In the event title is found to be merchantable and the Purchaser fails to carry out and perform the terms of this agreement, the earnest money paid herewith shall be retained as damages and the earnest money shall be divided equally between the Seller and the Broker, provided however that the Broker’s portion of the amount so held as damages shall not exceed the commission he is entitled to under this contract, and provided further that nothing herein shall be construed to limit the right of either party to enforce the specific performance of this contract. Owners of properties sold or exchanged under this contract agree to pay (TO BE AGREED ON) commission to AGUR REALTY CO., INC., based on the purchase price as shown in paragraph two at closing of the sale.
(11) SPECIAL PROVISIONS: Any visible or invisible easements shall have to be approved by the purchasers. It is understood that this property is presently zoned Commercial and can be used as a milk processing plant which will comply with the Mississippi Board of Health requirements. All Utilities available except Sewerage.
Pursuant to this contract $5,000 was paid by appellant to Agur Realty Co., Inc. in escrow for Jack Goldin.
No problem arose as to the amount, location or description of the land in question. However, upon examination of the tendered title it was found to be subject to six restrictive covenants, three of which are pertinent in this case and are set out as follows:
(3) The said premises may be used for any commercial, mercantile, or manufacturing purposes.
(4) No obnoxious or offensive trade shall be carried on upon any lot, nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood. * * *
(6) If the grantees hereto, or any of them, or their heirs or assigns, shall violate any of the covenants herein, it shall be lawful for grantors, their heirs and assigns to prosecute any proceedings at law or in equity *411 against the person or persons violating or attempting to violate any such covenant and either to prevent him or them from so doing or to recover damages or other dues for such violation.
A brief, unsuccessful effort was made to get the adjoining landowners holding rights under the restrictive covenants to amend or waive them. After this failed, the appellant refused the tender of title and made a demand for return of the earnest money on the basis that the title was unmerchantable for the purpose of constructing a milk processing plant, the known purpose for the transaction.
The earnest money was not returned so the appellant filed a bill of complaint seeking recision of the contract and return of the earnest money. In its bill of complaint the complainant alleged that it had been informed by an adjoining landowner that if it were to erect a milk processing plant appellant would be sued for damages and/or an injunction under the terms and provisions of the restrictive covenants running with the land. Appellant alleged further that there was a good probability that the adjoining landowners might be successful in such a suit. The appellees answered and admitted the restrictive covenants but denied the tile was unmerchantable or that the appellant had a right for the return of the earnest money. They also filed a cross-bill seeking specific performance of the contract or, in the alternative, a judgment granting them damages in the amount of the earnest money.
The first witness called for appellant at the trial was the attorney of one of the adjoining landowners who was a developer of residential subdivisions and had built approximately six hundred homes southeasterly and southwesterly of the property in question. The attorney stated that he had advised his client against any waiver or amendment to the existing restrictions running with the land. On cross examination appellee’s attorney received the following replies to the general line of questioning about possibilities of suit.
Q. If a milk processing plant were to be erected and maintained on the property in litigation here, which plant would comply with the Mississippi State Board of Health requirements for sanitation purposes, is it your intention to advise your client in this case, who is the adjoining land owner, to enter suit either for damages and/or injunction?
A. Let me put it this way, I don’t know what the Board of Health requirements are, and whether they were met, frankly, or not met, wouldn’t be the determining factor in any advice that I would give to my clients. Now, my clients at the present time have no intention — there is no question at the moment, but if there were milk solids that went in an open ditch that created smells and flies, we would have to enforce them, and I will point this out, something else, milk distributing plants have a lot of trucks and moving equipment that do go early in the morning, you know, and if they created noise and trouble, that could cause some more possibilities. I am not trying to say * * * but that’s just the things that, frankly, I considered.
Q. Well, Mr. Guice, is it safe to say that your objections would be not so much as to the maintenance or construction of such a plant if it were properly run, but as to the way it could conceivably be run and operated? Would that be a fair statement?
A. I really believe that could be a fair statement. I did not want to be in a position of waiving any of our rights in the event that noise was created or some noxious condition created by the milk solids.
Appellant called as a witness an officer of the Barber Pure Milk Company who *412 was directly concerned with the proposed milk processing plant to be built upon the land in question. He stated that the cleaning operation of such a plant would require 25,000 gallons of water per day which they had proposed to dump in a drainage ditch which ran across the land in an east-west direction and that a certain amount of milk products residue would be connected with the water as it went down the ditch. The officer also testified as to the general loading operations of a milk processing plant in the early morning hours, 5 to 6 a. m., and stated that the noise from such operation could be heard 150 to 200 feet away. He also stated that compressors on some milk trucks would run all night and that would create noise.
The appellees called the City Clerk and Tax Collector of Gulfport, Mississippi, to identify section 14 — 3 of the City Ordinances of the City of Gulfport which was placed into evidence and the pertinent part of which reads as follows:
Sec. 14-3. Unsanitary premises declared nuisance; abatement and correction.
(a) Declared nuisance. Any premises or grounds anywhere in the city, occupied or unoccupied, being by reason of any kind of filth or stagnant water accumulating thereon, or from any other cause, in an unsanitary condition to such an extent as is calculated to endanger the life or health of the citizens of the city, or of the neighborhood in which the same may be, or such an extent as to be offensive to the sight or smell of persons residing or being in the neighborhood, is hereby declared to be a nuisance, subject to be dealt with as hereinafter provided.
The witness also testified on cross-examination that due to the recent failure of bond issues sewerage service by the city to the property in question was not contemplated in the near future.
The chancellor found that when restriction No. 3 was construed with restriction No. 4 the resulting encumbrance was no greater than the restriction imposed by law, specifically Section 14 — 3 of the City Code of Gulfport, Mississippi. He held that appellant was not entitled to a recision of the contract. He also held that appellees were not entitled to specific performance of the contract, but held that unless appellants went forward with the purchase of the property within fifteen days, the $5,000 could be retained as damages for a breach of the contract.
It appears from the opinion of the chancellor that in reaching his decision he was influenced to some extent by a feeling that the interest of the public was involved in this case. We do not think that public interest is involved. If the parties entitled to enforce the restrictive covenants running with the land were parties to this action, then public interest might be involved. The terms of the contract required appel-lees to furnish a merchantable title. The burden of proof was upon them to show beyond a reasonable doubt that there was no defect in their title that would render the title unmerchantable. Union & Planters’ Bank & Trust Co. v. Corley, 161 Miss. 282, 132 So. 78 (1931). Suggestion of error overruled, 133 So. 232 (1931).
Appellees do not deny that the restrictive covenants in the absence of the city ordinance, would render the title un-merchantable. They rely upon the principle that where the restrictive covenants impose no greater burden upon the land than that imposed by law, then such covenants do not render the title unmerchantable. While we are in accord with this principle, we do not agree that the restrictive covenants impose no greater burden upon the land than does the city ordinance. The ordinance provides that unsanitary premises are declared a nuisance. It prohibits a property owner from creating or allowing to be created conditions on his premises that would cause an unsanitary condition to such an extent as would be calculated to endanger the life and health of the neighborhood. It *413 is a sanitary measure designed to protect the health of the citizens and prohibits only unsanitary conditions of such a degree that it could be said that they were calculated to endanger the life or health of the neighborhood. On the other hand, the restrictive covenants, while permitting the use of the property for commercial, mercantile or manufacturing purposes, prohibits the user from doing anything on the premises that may be or become a nuisance, or from doing anything on the premises that may be or become an annoyance to the neighborhood. There is a great difference between acts necessary to constitute a nuisance and acts that cause annoyance. Any acts that cause discomfort, irritation, or is vexing to the inhabitants of the neighborhood would be an annoyance, but would not necessarily constitute a nuisance. Appellant could operate a milk processing plant on these premises in a manner that would not be in violation of the ordinance, but could subject it to suits for violation of the covenant. The proof shows without contradiction that in the operation of such plant there is of necessity noise created during the night and early morning hours. Then there would be light, increased traffic, congestion, and flow of water through the drainage ditch. These things might annoy the neighborhood although they certainly would not violate the ordinance. The evidence clearly indicates that at least one property owner in the neighborhood intends to enforce the restrictive covenant to the extent that he is able to do so. We held in Corley, supra, that if there is a reasonable chance that some third person may raise a question against the owner after the completion of the contract, that this is a circumstance which renders the bargain a hard one for the purchaser. Certainly here there is more than a reasonable chance that appellant, in the operation of the milk processing plant on these premises, would be confronted with litigation. The success or failure of such litigation is not the question.
The chancellor was in error in taking into consideration the public interest in reaching his decision and was manifestly wrong in holding that the restrictive covenants placed no greater burden upon the land than did the city ordinance. For the reasons stated the decree denying the relief prayed for in appellant’s bill of complaint is reversed and the judgment will be entered here rescinding the contract and directing appellees to return the $5,000 to appellant.
Reversed and judgment here for appellant.
GILLESPIE, P. J., and JONES, BRADY and ROBERTSON, JJ., concur.