While there is much in the result reached by the majority I find palatable, there is little in the law which supports it. The *Page 278 
majority has cited no case here or in any other common law jurisdiction which supports the inescapable effect of the majority's holding: that henceforth the covenant of power to sell contains within it an implied covenant of merchantability of title. I suggest no such case may be found. Changes should be made in our law of real property only in cases of compelling necessity. This is not such a case.
Without any doubt, our law afforded Lexie Howard facilities for protecting himself against the eventuality which has transpired, only he failed to use them. First, Howard could have obtained a competent examination of title before he purchased from Clanton. If he had done so, he would have discovered the same problems Donald Sultan found.[1] Second, he could have refused to buy unless Clanton expressly warranted to him the merchantability of the title. He did neither.
I am confident that, back in 1975 when he purchased the land from Clanton, Howard had no desire to buy a lawsuit. He could easily have protected himself from such, insisting upon a contract of sale wherein Clanton would have covenanted to convey merchantable title. See Union and Planter's Bank Trust Co. v.Corley, 161 Miss. 282, 312, 133 So. 232, 237-38 (1931); Nixonv. Franklin, 289 S.W.2d 82, 88 (Mo. 1956). Prudently, he should have insisted that the deed Clanton gave him include an express warranty of merchantability of title.[2] The majority nevertheless gives Howard the relief to which he would be entitled if he had utilized the facilities and opportunities which our law made available to him, but which he wholly ignored.
As the majority correctly notes, the use of the word "warrant" without restrictive words in an instrument of conveyance implies five covenants known to the common law. Miss. Code Ann. § 89-1-33
(1972). A covenant of merchantability of title has never been held, expressly or impliedly, in this jurisdiction or anywhere else in the common law world, among these five.
The majority finds that Clanton has breached one of those covenants — the covenant of power to sell.[3] All of the treatises on the subject opine that the covenant of power to sell (alternatively known as covenant of right to convey) and the covenant of seisin are for all practical purposes identical in content and scope. 6A Powell on Real Property pp. 896-97 (1984); 3 American Law Of Property § 12.127 (1952); 2 Devlin,Real Property and Deeds § 893 (3d Ed. 1911); Rawle, The Law OfCovenant For Title §§ 66-67 (5th ed. 1887).
The covenant of power to sell constitutes an affirmation of a legal status, in this instance ownership of fee simple title. The majority correctly notes that breach is universally regarded as having been shown where the grantor is proved, at the time he delivered the warranty deed, to have had less than the "very estate in quantity and quality which he has purported to convey". 7 Thompson On Real Property § 3178, p. 240 (1962). See Bridgesv. Heimburger, 360 So.2d 929, 930 (Miss. 1978). Put otherwise, breach occurs where at the time of conveyance there is *Page 279 
 a title existing in a third person, which may
defeat the estate granted by the convenantor. (Emphasis added).
H. Weston Lumber Co. v. Lacey Lumber Co., 123 Miss. 208, 216, 85 So. 193, 195 (1920).
The majority accords the word "may" in this statement a meaning other than what is there expressed. Obviously, anytime there is a pretender to title, the estate granted may be defeated, for the outcome of a lawsuit is never certain. Under the majority's approach any extant third party claim, no matter how insubstantial, results in breach of the covenant. The only workable approach to breach lies in requiring that the covenantee show that the estate granted has been defeated, not that it may be defeated.
All are agreed that the breach, if there be one, must be found in the facts as they existed at the moment Clanton delivered the warranty deed to Howard. To be sure, there were facts of record at that time which suggested that the Carpenter heirs had a claim to the property. Those facts, however, as they must now be seen, would suggest only the absence of a merchantable title in Clanton. The fact that the outcome of the chancery court lawsuit was not certain and that, indeed, there may have been in the record of that case evidence from which the chancery court could have ruled the other way would go only to the claim of breach of a covenant or warranty of merchantability, had there been one.
These facts simply do not establish a breach of the covenant of seisin or power to sell (right to convey) or any other covenant in law or in fact given by Clanton to Howard.
Obviously, if in May of 1975, someone had held rights in the property superior to those of Clanton, a breach of the covenant would have occurred at the moment he delivered the deed to Howard. If the Carpenter heirs had been successful in the prior litigation — the effect of which would have been entry of a final decree thereby vesting them with title and canceling Clanton's claims — we would without question have violations by Clanton of the covenants of seisin and of power to sell which he extended to Howard.
What the majority overlooks is that there is a difference between the real property concept of fee simple title and the concept of merchantable title. Fee simple title refers to the entire bundle of rights in the property ownership of which is a legal status which ultimately may be established by litigation. One may have fee simple title and yet not merchantable title. To be merchantable,[4] a title must be one which as a practical matter "can be sold or mortgaged to a person of reasonable prudence". Jones v. Hickson, 204 Miss. 373, 396, 37 So.2d 625, 629 (1948); Union and Planter's Bank Trust Co. v. Corley, 161 Miss. at 312, 133 So. at 237.
Without doubt, back in 1975 Clanton's title was not merchantable. The fact that a title is not merchantable, however, does not establish that it is bad or that there has been a breach of the covenant of seisin or power to sell (right to convey). 7Thompson On Real Property, § 3180, p. 248 (1962).
If there has been no breach of the covenant, obviously there is no right of recovery of expenses incurred in making the title good. The inescapable effect of the outcome of the first suit is a judicial determination that, back in 1975 Clanton conveyed exactly that which he purported to convey to Howard — fee simple title. Clanton in no way purported to convey, or warranted that he was conveying, maerchantable title. Clanton warranted that he had and was conveying a title that could be successfully defended in the event of litigation. He did not warrant that the title would never have to be so defended.
The point was put in Presley v. Haynes, 182 Miss. 44,180 So. 71 (1938), an analogous case involving a claim of breach of the covenant of warranty of title *Page 280 . . . [A] warrantee cannot recover of the warrantor the expense of making the title good of record when it was already actually good by readily available and undisputed facts in pais.
182 Miss. at 50, 180 So. at 72.
True, the facts were not undisputed in 1975. The dispute then existing, however, has been laid to rest in that on July 23, 1982, the Chancery Court of Grenada County held and adjudged Donald Sultan to be the owner in fee simple by virtue of the warranty deed Sultan held from Lexie Howard. Howard's title, of course, was derived by virtue of the warranty deed executed by Haven Clanton in May of 1975. The effect of the Chancery Court decree of July 23, 1982, is that there was in May of 1975 no title existing in a third person sufficient to defeat the fee simple estate theretofore held and thereupon granted by Clanton. This being so, there can be no breach of the covenants of seizin and power to sell.
For these reasons, I respectfully dissent and would not reach any of the other issues discussed by the majority.
[1] If Howard purchased with his eyes open, knowing of the problems with his title (I am not clear from the record whether this is the case), I do not know why we should relieve him of the risk he assumed.
[2] I say "prudently" in that all prior negotiations and contracts are ordinarily thought merged into the deed of conveyance. See West v. Arrington, 183 So.2d 824, 827 (Miss. 1966); but see, Phillips Petroleum Company v. Stack,231 So.2d 475, 481-82 (Miss. 1970).
[3] The nature of the claim asserted by Howard would implicate the covenant of warranty of title (sometimes merely the "covenant of warranty") more logically than the two covenants discussed above, for it is covenant of warranty that is ordinarily thought of as obligating the grantor to defend against third party assaults against the title. Warranty, however, would afford Howard no relief for breach thereof occurs only upon disturbance of the covenantee's possession. See Wilder v. Wilhite,190 Kan. 564, 376 P.2d 797, 799 (1962); Bolinger v. Brake, 57 Kan. 663, 669, 47 P. 537, 539 (1897). The same result obtains if one tries to fit Howard's claim within the related covenant of quiet enjoyment. Brown v. Lober, 75 Ill.2d 547, 27 Ill. Dec. 780, 785, 389 N.E.2d 1188, 1193 (1979).
[4] "merchantable" and "marketable" are used interchangeably by Justice Ethridge writing for the majority in Corley, 161 Miss. at 312, 133 So.2d at 237-38.