## MARSHALL COUNTY *v.* CALLAHAN *et al.*

### [94 South. 5, No. 22500.]

1. HIGHWAYS. *Provisions of road contract as to performance and payment held not separable; party to road contract cannot recover for breach thereof without showing performance or tender of performance on his part.*

   Where a contract for the construction of public highways entered into by a county and a road contractor provides that such contractor shall do the work of construction according to the contract and plans and specifications made a part thereof, and that the county will pay the contract price for such work to such contractor in monthly installments as the work progresses on estimates of the engineer in charge of such work, such covenants are not separable but are interdependent, and one party to such contract cannot maintain an action against the other for a breach thereof, without showing performance or tender of performance on his part as well as ability to perform; the rule being that a party who has himself breached such contract cannot recover on it.

2. COUNTIES. *County cannot allow claim without money in particular fund wherewith to pay it; statute prohibiting issuance of warrant without money in fund for payment applicable to warrant to road contractor on monthly estimates.*

   Section 3, chapter 209, Laws of 1918, as amended by chapter 326, Laws of 1920, which provides that no warrant shall be issued or indebtedness incurred by any county, unless there be sufficient money in the particular fund from which such allowance is to be made to pay such warrant or indebtedness, prohibits a county from allowing any claim against it, as well as issuing a warrant therefor, unless there is sufficient money in its treasury in the particular fund from which such allowance is to be made or such warrant paid; and the inhibition of the statute applies to allowances by a county to a road contractor on monthly estimates by the engineer in charge of construction.

3. HIGHWAYS. *Contractor justified in refusing to complete contract, where county was without sufficient funds to make payments to become due, and had taken no steps to acquire funds.*

   Where a road district was organized under chapter 145, Laws of 1912, as amended by chapter 176, Laws of 1914, and the bonds of said district issued and sold and the proceeds thereof received into the county

treasury, and a contract let to a road contractor to construct highways in such district, and such contractor has proceeded with the work of construction to the point where all the proceeds of such bond issue have been exhausted in payments to him on such contract in monthly installments on estimates of the engineer in charge, as provided by the contract, and the work has not been completed, and the county has taken no steps to issue additional bonds or otherwise provide for meeting the monthly installments as they become due to the contractor, the latter is justified in refusing to proceed further with the work.

4. HIGHWAYS. *County suing contractor for refusal to proceed with work must prove that it had funds or had taken steps to procure funds with which to meet monthly installments.*

Where the county sues the road contractor on said contract for damages for a breach thereof in failing to proceed with the construction of the public highways contracted to be built, the county is not entitled to recover unless it allege and prove that it either had funds in its treasury to meet the contractor's monthly installments, or that it had taken steps by which it would certainly realize such funds.

On suggestion of error. Suggestion of error overruled. For former opinion, see 93 So. 194.

*D. M. Featherston, Wall Doxey* and *C. L. Bates,* for appellants.

The appellees in their brief filed in this case base their whole argument on their allegation of "appellant's failure and inability to perform its part;" that the alleged work done, after the fifth day of January by appellees, might be omitted and still appellant not be entitled to recover, because it was not ready, willing and able to perform its part of the contract.

They ignore entirely the allegations of appellant, that appellees had breached, broken and abandoned the contract on their part long before July or August, and would have this court decide the case upon the self-serving declaration of appellees, that "they would go back and complete their contract, if paid for the alleged work done after the fifth day of January and guaranteed that they would be paid, for future work," as made before the board of supervisors, in July or August. Was appellant able to perform?

The contention of appellees that the proof shows that appellant was not able to perform its part of the contract and to pay the contractor for the whole of the work that he performed and the work necessary to complete the roads according to the contract, is wholly untenable.

Let it be remembered that this road district was created, the contract made and the work let under chapter 176, Laws of 1914, under which bonds could be issued for only ten per cent of the assessed value of the property in the district and it is conclusively presumed that the bonds issued did not exceed that limitation.

But under section three of the Act approved March 26, of the Laws of 1920, amending said Act of 1914, the board of supervisors was authorized to issue additional bonds not to exceed five per cent additional of the value of the property in the district; and that amended law was in force some months before the contractor raised any question as to the ability of the county to pay him for the whole construction of the work. Under the amendment provided in the last act, the power of the board of supervisors to raise the necessary funds is clear and absolute; and the present contention of the contractor was an afterthought and a subterfuge to escape liability for his own breach of the contract.

The said third section of said Laws of 1920, chapter 277, contains this provision, to-wit: "That any county or supervisors' district or part of supervisors' district or districts which have heretofore issued bonds in said county, supervisors' district or parts of supervisors' district or districts to an amount of ten per cent of the assessed valuation of said county, supervisors' district or parts of supervisors' district or districts, may, under the provisions of this act and in pursuance thereof, issue bonds in addition to those already issued if bonds have heretofore been issued to an amount of ten per cent of the said assessed valuation of said county, supervisors' district or parts of supervisors' district or districts." (See Laws 1920, chapter 277, section 3, later clause, page 394).

This is a general law of the state and appellees are charged with notice. The county being authorized to issue more bonds, was able to perform and was willing as shown by notices sent contractor to resume work. Appellees cited *Leek Milling Company* v. *Langford,* 81 Miss. 728, as exactly in point.

We cannot agree with them. That case states the general rule of law, that a party must be financially able to perform his covenants. We do not think the general rule of law means that a party must have the money necessary to fulfill the said covenants actually in his hands at the time. The facts in *Milling Company* v. *Langford,* show conclusively that the party was unable to perform his contract. He was honestly and zealously indeavoring so to do. Twice was his machinery levied upon and taken away from him by law, and he had no means or credit with which to purchase more.

The facts there are very different to the fact in the case at bar. In that case Chief Justice WHITFIELD delivered the opinion of the court said: "There is very much in the evidence to suggest the fact that the machinery bought by the appellee was levied upon and taken from him, from time to time, because he failed to pay the purchase money, was itself the reason of the contract going to pieces (81 Miss. 731). That shows a case of absolute insolvency and bankruptcy, between which and the case at bar there is no analogy.

The inability of the party to perform in that case was absolute. 13 C. J.; sec. 724, page 651. "It would seem that the impossibility of performance by the party must be absolute." This court was applying this rule under the facts in the case of *Milling Co.* v. *Langford.* Was the impossibility of the appellant to perform absolute? They must be absolute (13 C. J., sec. 669, p. 615). "Mere probability that the adverse party will be unable to perform at the time fixed is insufficient to justify a rescission."

Appellees contend that the failure to pay the alleged claim for the work alleged to have been done after the fifth day

of January as justifying them in refusing to resume work, when called upon so to do, and prevents recovery and that the refusal of said claim may be considered as one fact showing appellant's inability to perform, and cites as sustaining this contention, *Phillips, etc., Construction Co.* v. *Seymore et al.* 91 U. S. Supreme Court Reports 646, 23 L. Ed. 341. We would again call the attention of this court to the difference in the facts in the case at bar and that cited. In that case, there was not one, but two payments past due, for the months of October and November. Quoting from the opinion in that case by Justice MILLER in U. S. Supreme Court Reports, page 647: "The plaintiff brought this action of covenant on these contracts, alleging that they had commenced the work in the month of July, 1872, shortly after the contract was signed, and prosecuted it vigorously until sometime in December; that defendant had failed to pay the large sum due by the estimates for work done in October and November; and seeing no prospect of payments, plaintiffs were compelled to abandon the work and bring this suit."

There was no question in that case of contractor having breached, broken and abandoned the contract, nor of any contested claim for work, the estimates by engineers were there according to the terms of the contract, there were two large payments past due and no prospects of their being paid and contractor was vigorously prosecuting the work, when he was informed or learned of the other party's absolute inability to perform their part of the contract.

In the case at bar there is only one claim for alleged work, which is denied by the appellant as being due or a legal charge. There is no estimate of the engineer of said alleged work for which said claim is preferred. The appellee not only was not prosecuting the work vigorously, but had ignored all notices given by appellant to prosecute said work to completion, and had employed counsel in April to represent him in this case, and it is alleged that he had some time previously abandoned said contract and breached and broken the same, and we insist that the evi-

dence in the case bears out said allegation, and that there is no analogy between the case cited and the case at bar. The facts in the case cited from U. S. Supreme Court reports, show that the technical default in that case had been waived by the other parties, to the contract. The general rule of law must be applied to the facts in the case at bar.

The citation from Corpus Juris, given in appellees' brief, is not applicable to the principle or rule of law under discussion "Inability to Perform." Section 148, Vol. 9, page 810, conclusion of paragraph as cited in appellees' brief is misleading. We content ourselves with quoting section 148, 9 C. J., page 809: "Damages for defective performance or nonperformance—In general. An owner who has sustained injury by reason of a breach of the contract by the builder may recover either in an independent action, or as a set-off or counterclaim in an action by the builder, all damages therefor which are the proximate result of the breach; but he cannot recover remote or speculative damages. Where the builder is justified in abandoning further work under the contract, the owner cannot recover damages for a failure fully to perform the contract."

We don't think that the case of *Young* v. *Leflore County*, 81 Miss. 466, holds that. We have no fault to find with the decision in that case. The decision was based upon sections 292 and 342 of the Code of 1892. Section 292 of said Code is 311 of the Code of 1906 and 342 is section 363 of the Code of 1906. As we read the decision in that case the court simply said to them, you have mistaken your legal remedy; you could have appealed from the decision of the board of supervisors or sued in an independent action as section 292, Code of 1892, section 311, Code of 1906, which provides a claim against a county must be presented to the board of supervisors before suit can be entered thereon, and that the party may then appeal from said board's decision or may enter independent suit. There is no intimation that the contract in that case was superior to the statute, but if we read the decision correctly the rights of the party or parties under the contract were controlled by and enforce-

able under the statute, and that is all appellant is contending for in the case at bar.

Appellee quotes from 9 Corpus Juris, page 833, sec. 171: "The general rule is, where the time of payment is stipulated in the contract, it is the duty of the owner to make payment when due, without demand." Under section 170, of said authority on said page 833: "Installments as work progresses," it says, "and where the installment payments are to be made on the estimate and certificate of the architect and engineer, no payment can, as a general rule, be claimed without the required estimate and certificate," and that it is only where the engineer wrongfully or fraudulently refuses to estimate the amount and value of the work and issue his certificate therefor that the builder is entitled to a payment without its production, 114 Miss. 474. *Fidelity & Guaranty Co.* v. *Jefferson Davis County,* 114 U. S. Reports, 649; *Martinsburg & Potomac R. R. Co.* v. *March.* The law and the contract in the case at bar make the engineer's certificate necessary and conclusive. If as appellees contend, the engineer is agent of appellant, upon whom does the burden rest to show fraud or wrongful withholding of engineer's estimate? Certainly not upon the appellant. The burden is upon the party attacking by alleging the work was done, and if it is part of the contract that they must have the engineer's certificate of estimate of work before payment, it is appellee's duty to show why they have not said estimate.

Have they (appellees) shown any wrongful or fraudulent withholding of same? 9 C. J. page 828, sec. 166 (evidence of fraud): "The burden of proving the fraud on part of the architect or engineer is of course on the party attacking the measurements and classifications and the evidence must be clear and convincing and point with reasonable certainty to fraud or collusion."

The evidence shows that the work was suspended about the middle of January. It is from the 5th day of January, the time of engineer's last estimate; they are claiming, for work alleged to have been done, nine hundred dollars or one

thousand dollars. The engineer testifies that: "No man could have gone on with the construction at that time."

The work alleged, by appellees, to have been done after the fifth day of January, is not claimed to have been a full month's work, and the contract and the law (Laws 1914, ch. 176, sec. 14, page 248) require estimates and payments only at the end of each month (See Contract, Tr. 21). The last estimate made by the engineer was on January 5, 1920, for the work done during the previous month including the five days in January; and work was finally suspended about the middle of January, and certainly not later than the twenty-second; and the contractor was therefore not entitled to an estimate until he should return and complete the month's work according to the contract.

Under the terms of the contract and the statute, appellant is not in default, neither in making estimates nor in payment. In determining whether there has been a repudiation of a contract by one of the parties . . . the test is; whether the acts of the party evinced an intention to no longer be bound (13 C. J., page 615, sec. 668); and the evidence shows that as early as April, 1920, appellee Callahan employed counsel to represent him in any suit that might be brought for his failure to perform this contract, which was some time before he was notified to return to work and complete said contract and some time before he ascertained the condition of the road funds.

To avoid the error of the trial court in giving the peremptory instruction, appellees' counsel, in their brief alleges that the question as to whether appellee Callahan breached his contract is a question of law only and not a question of fact, and bases that contention upon the assumption that the evidence clearly showed that appellant was unable to perform its contract. As above shown, that assumption, upon which appellee's whole theory of the case is based, is, as above shown, wholly untrue and without foundation in this record. The reverse of the position of the two points stated on page 7 of appellee's brief is true; the question, appellant's ability to perform, is a question of

law, and automatically determine in appellant's favor by section 3, Acts of 1920, heretofore cited.

Appellees close their brief with a seeming query but in reality a statement of what appellees would have this court consider as laches of the appellant. The county was in position to fulfill its part of the contract. Act 1920, chapter 277, section 3, page 394, heretofore cited. Appellee Callahan would not be held to his contract, but breached and abandoned same, in spite of all the county could do to hold him to a performance of same, and that is the reason we are now before this court with this suit.

We agree that those who deal with governmental agents must take notice of the limits of their authority, and therefore appellees are chargeable with the knowledge that the county could issue bonds to the amount of fifteen per cent of the value of the assessed property of the Cayce Separate Road District, and was therefore amply able to pay for all work to be done in fulfilling its part of said contract, and all legitimate charges necessary for the completion of said roads according to the plans and specifications in accord with said contract.

Appellees are not only chargeable with notice, but in this instance they were given personal notice that the county could issue more bonds. In that memorable "casual conversation" of the self-serving declaration, that he was willing to go back and finish the work, if paid for January work and guaranteed for future work, made before the board of supervisors in July or August, when informed that the county could issue more bonds, replied, "That is baby talk."

When a party to a contract ignores the notices to return and complete the work and employ counsel (as Callahan did in April), to resist any enforcement of said contract, before notice was given to resume work and several months before suit is brought; can that party to the contract on the trial of the cause be heard to ask, "why the other party to the contract did not put itself in position to carry out its part of said contract." 13 C. J., page 659, sec. 739.

"A breach is not justified by anything that the other party subsequently does or omits to do."

The appellant was authorized under the law to issue bonds in the amount of five per cent of the assessed value of the property, additional Acts, 1920, chapter 277, sec. 3, page 394.

*Lester G. Fant,* and *Wm. M. Hall,* for appellees.

First Assignment: The plea complained of is found on page 53 of the record, and the defense set up therein is in substance that the county did not have the funds with which to pay for the work that had been done or that might thereafter be done in justification of appellee Callahan's refusal to resume and complete the work.

The case of *Leek Milling Company* v. *Langford,* 81 Miss. 728, is exactly in point. The ruling there was that one must show his financial ability to perform his covenants, and that if he was not in condition to do so, the other party could not be held to his. Appellant's failure and refusal to pay Callahan when he was called on in June to resume the work, for what he had done during the month of January, was merely inducement to the main proposition which was as hereinbefore stated. The defensive matter set up was a fact or it was not a fact, and it called for a denial or a confession and avoidance, and the demurrer was, therefore, properly overruled.

We do not mean, however, that we think and concede that the fact that Callahan was not paid, before or when he was called upon to resume, in accordance with the contract, for the work which he had done in January, was not sufficient in itself to justify his refusal to resume and prevent appellant from recovering from him. We think and contend that it was. We are merely saying that that may be considered as one of the facts showing appellant's failure and inability to perform on its part, and might be omitted and appellant still not be entitled to recover, because it was not ready, willing and able to perform on its part.

The supreme court of the United States held in *Phillips & Colby Construction Company* v. *Seymour*, 91 U. S. 646, 23 L. Ed. 341, that failure to make a progress payment justified the contractor's abandonment of the work, and that this was true, although the contractor himself was in in technical default because the time in which he was to finish had elapsed. 9 C. J., 809, section 148. Counsel has evidently overlooked *Young* v. *Leflore County*, 81 Miss. 466, which rules the proposition the other way. Here, just as in that case, the county's obligation and Callahan's rights arose from the contract, not from any statutory provision for reporting upon the work.

The contract sued upon obligated the county to have its engineer to make the estimate and the county to pay on or about the 10th of the month the amount of the estimate, less fifteen per cent to be retained. The law is that, where the time of payment is stipulated in the contract, it is the duty of the owner to make payment when due, without demand. 9 C. J. 833.

Third Assignment: The complaint which appellant makes in its third assignment of error of the admission of evidence as to the amount of work done by appellee Callahan after the 5th day of January, 1920, when he received his last payment, is also based, we submit, upon the same misconception of appellees' defense. The purpose of this evidence was to show that work had been done under the contract after the last payment, and the approximate amount thereof, so that the court and jury could see what amount had to be paid for past work, as well as what amount had to be paid for the work remaining to be done, and would know whether our contention that the county was without the funds to carry out the contract was true or untrue, and certainly this evidence was relevant to our defense and was competent to establish that defense. It is also to be said that appellant could not object to the admission of this evidence, if it was the duty of the county under the contract to have the engineer determine the amount, as hereinbefore suggested.

Fourth Assignment: Appellant complains, in its fourth assignment of error, of the admission in evidence of the matters that occurred before the board and contends that this evidence was, under the Code section and the decisions cited, erroneously admitted. The Code section (305, Code 1906), cited simply provides that it shall be the duty of the clerk of the board of supervisors to keep a complete and correct record of all proceedings and orders of the board, entered on the minutes. The names of the members who do and those who do not attend the meetings, safely keep all records, books and papers pertaining to the office and deliver them to his successor, and that the minutes of each day shall be read and signed by the president before final adjournment of the board. And the decisions cited are all simply to the effect that contracts binding on the county can be made only by orders, within the authority of the board, entered on the minutes, and that such orders cannot be varied by the preliminary or contemporaneous statements of individual members of the board. We are at a loss to understand how that statute and those decisions render incompetent testimony of members of the board to the effect that the county did not have the money to pay for the work that had been done, and would have to be done to complete the work, and to the effect that the contractor came before the board with the commissioners and told them that he would not go on unless he was assured of his money, and that they did not give him any assurance. Now, had the board given Callahan assurance without making any order on its minutes to that effect, and Callahan was trying to hold the county on the strength of those assurances, appellant could invoke those decisions, very effectively, but there is nothing of that sort here. We know of no statute or decision that renders members of the board of supervisors, commissioners or other officials, incompetent to testify as to what means a county or road district has to carry out its part of a contract, or as to what a contractor stated to them that he was willing or unwilling to do in the circumstances.

Appellant, in its sixth assignment, complains of the giving of the peremptory instruction to find for appellees. We find no fault with counsel's law as to when such an instruction should not be given. It is only familiar learning. Counsel assert but do not show in their brief that there was irreconcilable conflict in the evidence as to (1) whether appellant had broken the contract, and (2) whether Callahan was justified in abandoning the contract.

The first question is one of fact, but the second, it seems to us, is purely a question of law, the former determining the latter. The inquiry then is whether there was any conflict of evidence with reference to the first question.

We have then undisputed testimony that Callahan was satisfactorily performing his contract, and the work was suspended under the authority of the engineer with approval of one commissioner and without objection from the others because of weather conditions, and that when the engineer and commissioners notified him to resume, the county was undeniably and admittedly without the funds to pay him for the work done just before the suspension, which, under the terms of the contract, he was entitled to have the engineer give him an estimate for, so he could collect his money therefor, and to pay him for the remaining work he would do to complete, and to pay him upon completion of the contract, the percentage withheld from his monthly estimates, and made no effort to provide additional funds, and did not undertake to give him any sort of assurance about his pay. Callahan on the other hand showed his willingness to resume and even offered to take notes. The court on such a showing could not have allowed a verdict in favor of appellant to stand if the case had been sent to the jury and returned a verdict for appellant, because that would have been to allow a party who was not ready, willing and able to perform on its part to recover from the one who was. That would be contrary to common justice and contrary to the law announced by this court in *Leek Milling Company* v. *Langford*, 81 Miss. 728, and other authorities cited. The court below could not,

therefore, have done otherwise than give the peremptory instruction to find for defendants.

Why the county authorities in charge of the work did not see fit to put themselves in position to carry out the contract on their part and hold Callahan to his contract and secure completion of the work as contemplated by the plans and specifications is beyond our comprehension. Those who deal with governmental agents must take notice of the limits of their authority, and Callahan, knowing the funds provided for this work had been exhausted, could not have safely done more work without knowing whether more money could and would be provided, and the county authorities owed him proper assurance if they wanted the work to be resumed and completed.

We respectfully submit therefore, that the action of the court below was correct and the judgment should be affirmed.

ANDERSON, J., delivered the opinion of the court.

Appellant, Marshall county, sued the appellees R. A. Callahan and the United States Fidelity & Guaranty Company in the circuit court of Marshall county for damages for an alleged breach of a road contract and of a road contractor's bond, made between appellant and appellee Callahan, with the United States Fidelity & Guaranty Company as surety on such bond. At the conclusion of the evidence, the court on motion of the appellees directed the jury to return a verdict in their favor, which was done, and a judgment entered accordingly, from which appellant prosecutes this appeal. For convenience the appellant, Marshall county, will be hereinafter referred to as the county and the appellee Callahan as the contractor.

The Cayce separate road district of Marshall county was organized under chapter 145, Laws of 1912, as amended by chapter 176, Laws of 1914. Road bonds of said district were sold, and the proceeds thereof received into the treasury of the county. The usual road construction con-

tract for the building of two improved highways in said Cayce separate road district was entered into between the county and the contractor, and the latter, to insure the faithful performance of such contract in accordance with the covenants therein undertaken by him, executed a bond to the county containing the usual stipulations in such contracts with the appellee the United States Fidelity & Guaranty Company as surety. The contractor thereupon entered upon the construction of said highways, and, after doing a considerable portion of the work, but before its completion, declined to further proceed with such work. Thereupon the county brought this suit against the contractor and the surety on his bond, for damages alleged to have been suffered by it on account of an alleged breach of said road contract and said bond.

One ground of defense made by the contractor is that he was relieved from the completion of said highways because the county at the time he declined to further proceed with the work had itself breached the contract in that it had no funds in its treasury with which to pay the contractor for the completion of his contract. The evidence is undisputed that when the contractor declined to proceed further with the construction of said highways there were practically no funds in the treasury of the county with which to pay for the work to be done. And furthermore, there is an entire absence of any showing in the record in this case that, at the time the county demanded of the contractor that he proceed to complete said highways, the county had either issued and sold additional road bonds with which to complete the work, or had taken any steps to do so, or to raise the necessary funds in any other manner known to the law.

This, therefore, is a case where the proceeds of the bonds issued and sold for the specific purpose of building improved highways in a separate road district had proved insufficient to complete the work planned and contracted for, and the road contractor thereupon declined to complete his contract and undertook to justify such refusal on the ground that there were no funds in the county treasury

with which to pay for the work to be done, and the county was taking no steps to provide such funds. Did such a condition justify the contractor in refusing to complete his contract? In order to determine this question, the character of the covenants of the contract involved is a matter of important consideration.

The contract provides for monthly payments by the county to the contractor, on estimates by the engineer in charge of the road construction. In other words it provides for progressive payments. It was the clear purpose and intent of the parties to the contract that said road project should finance itself by these monthly estimates and payments, provided of course the contract price was sufficient for the purpose; and that is the well-known plan and scheme of all such contracts. If it were not, there would be few bidders at their letting. Were the covenant in this contract on the part of the contractor to do the work, and the covenant on the part of the county to pay for same in monthly installments based on the estimates of the engineer in charge, severable? Or were they dependent each upon the other? Where covenants in a contract form the consideration for each other, if one is conditioned upon the other, the failure of one party to perform the covenant undertaken by him will discharge the other. One party cannot maintain an action against the other without showing performance or a tender of performance on his part. The rule being that a person who has himself breached such contract cannot recover on it. 13 C. J., section 694, pp. 627, 628; Idem, section 538, p. 567; 9 C. J., section 170, p. 833; *Leek Milling Co.* v. *Langford,* 81 Miss. 728, 33 So. 492. It therefore seems clear that the covenants in question in this contract—the covenant of the contractor on the one hand to do the work, and the covenant of the county on the other to pay for such work in monthly installments on estimates of the engineer in charge—are interdependent. They are each conditioned upon the other.

The question involved should be considered in connection with sections 3, chapter 209, Laws of 1918, which pro-

vides that no warrant shall be issued by any county or municipality, unless there is sufficient money in the particular fund from which the allowance is made to pay such warrant. This section, as amended in chapter 326, Laws of 1920, provides that no warrant shall be issued or indebtedness incurred, unless there is sufficient money in the particular fund from which the allowance is to be made to pay such warrant or indebtedness. The act of 1918 prohibits the issuance of warrants by counties, unless there are funds with which to pay the same, while the act of 1920 prohibits the issuance of warrants or the incurring of any indebtedness, unless there are funds in the treasury to meet the same. The issuance of a warrant is a mere ministerial act of the clerk, and must be authorized by a precedent allowance by the board of supervisors. The inhibition in the act of 1918 against issuing warrants carries with it an inhibition against the allowance of claims where there are no funds with which to pay the same. Therefore when the contractor in this case declined to complete his contract, in addition to an empty treasury and an absence of any showing that the county intended to provide funds with which to pay the contractor, said statute absolutely prohibited the county from allowing and issuing to the contractor, warrants for his monthly installments.

It is said, on behalf of the county, that it had power under the law to issue additional road bonds for this district in time to meet the contractor's first monthly installments, and might have done so. But a complete answer to that suggestion is that it might not have done so. This contract at least impliedly provides that the county will at all times have sufficient funds to meet the contractor's monthly installments. The court knows what is commonly known, that county bonds cannot be issued and sold in a day; it is a matter of weeks and sometimes months. The legality of such bonds are to be passed upon by competent bond attorneys, and in some instances their legality is contested in the courts, which may consume months and even a year or more. It is argued on behalf of the county that

there could be no breach on its part to pay the contractor until his claim had been filed with the board of supervisors and disallowed; that under the statute such action by the board is a condition precedent to any right on the part of the contractor to sue the county. However, the law never requires a vain thing to be done. It would be utterly useless to file a claim with the county when there is no money in the treasury with which to pay it, and in the face of the statute prohibiting its allowance and payment. An empty treasury in this case was a standing refusal in advance by the county to pay the contractor his installments. Under the law it amounted to notice by the county to the contractor that he should proceed no further with the work until funds had been provided to meet the payments to become due him.

In a suit for breach of a contract of this character, containing mutual and dependent covenants, the plaintiff cannot recover unless he is ready, willing, and able to perform the covenants undertaken by him. In this case it devolved on the county to allege and prove that it either had the funds in hand with which to meet the contractor's monthly payments, or that it had taken steps by which it would certainly realize such funds. It did neither. The disposition of this question renders it unnecessary to consider the other questions argued.

*Suggestion of error overruled.*