964 So.2d 586 (2007)
Sandra GUNN, Appellant,
v.
Miyo HEGGINS, Appellee.
No. 2005-CA-01794-COA.
Court of Appeals of Mississippi.
September 4, 2007.
*588 Johnnie McDaniels, Jackson, attorney for appellant.
Kay S. Rector, attorney for appellee.
Before KING, C.J., GRIFFIS and BARNES, JJ.
*589 BARNES, J., for the Court.
¶ 1. Sandra Gunn appeals from the judgment of the Chancery Court of Warren County, which ruled in favor of respondent, Miyo Heggins. Gunn alleges the chancellor erred in denying specific performance of a contract between Gunn and Heggins, in finding that time was of the essence in the contract, and in denying Gunn permanent injunctive relief. Gunn also asserts that Heggins is liable for damages that Gunn incurred. We find no error and affirm the chancellor's ruling that time was of the essence in the agreement and no specific performance or permanent injunctive relief was warranted. On the issue of damages, we reverse and remand the judgment of the chancery court as Heggins was unable to produce clear title as of the closing dates and, as such, owes Gunn a refund of her earnest money.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On January 21, 2005, Gunn, through her agent, Billy Drake, entered in a written agreement with Heggins, through her son and agent, John Heggins (John), to purchase the land, building and contents located at 1141 Hwy. 61 North, Port Gibson, Mississippi. The record title owner of the land at the time was Heggins's husband, Henry Heggins, according to a warranty deed dated November 16, 2001. Henry Heggins had recently died with a will which devised his entire estate to his wife and named her as executrix.[1] The total purchase price of the land was $185,000 with $5,000 in earnest money paid upon the signing of the agreement, and the remainder to be paid within forty-five days, March 7, 2005. The special provisions of the contract stated the sale was on an "as is" basis and closing was to be within forty-five days of the contract's signing. Gunn was, however, unable to obtain financing by this date.
¶ 3. On March 8, Drake paid John an additional $5,000 to extend the contract closing another fifteen days, in order to give Gunn and Drake more time to obtain financing. John agreed to the extension, and it was recorded on the original contract under "Special Provisions." On March 23, Gunn still had no financing in place and was unable to complete the purchase of the property. At no time during the contract period did Heggins file a petition to probate Henry Heggins's will. John then proceeded to negotiate with other buyers for the property. Also during this time, Fred Clark, a friend of Drake's, contacted the Britton & Koontz Bank to help Gunn obtain financing to purchase the property.[2]
¶ 4. John testified that, on April 5, Drake came to his office concerned that John was going to sell the property to another buyer.[3] Drake told John that Gunn still wished to buy the property. John told Drake that he would be willing to enter into a new agreement and sell the land for $185,000 with the contents being an extra $34,000. He offered to use the $10,000 already paid by Gunn as credit towards a new contract. The next day, *590 Heggins, through her attorney, Edwin Woods, filed a petition with the chancery court to admit her husband's will to probate.[4] Then, on April 7, William Bost, attorney, faxed Heggins a letter stating that he represented Gunn in the property closing and that Gunn planned to convey the property to a third party, Mr. Clark. In the letter, Bost also requested signatures from John and Heggins to confirm another extension to the original agreement. This confirmation was never signed by either John or Heggins.
¶ 5. On April 28, 2005, Gunn filed a petition for preliminary and permanent injunction and TRO in Chancery Court of Warren County. The chancellor granted an ex parte motion by Gunn, on July 22, 2005, which enjoined John from removing the contents of the building. Gunn then filed a motion to stay final judgment in order to prevent the Hegginses from selling the property to another buyer. The chancery court denied the motion. The chancellor issued a final judgment on September 8, 2005, which denied Gunn any injunctive relief or damages and found there was no breach of the contract by Heggins, allowing her to retain Gunn's $10,000 in earnest money. Gunn timely appeals from the chancellor's judgment.

STANDARD OF REVIEW
¶ 6. When reviewing a chancellor's findings of fact, this Court will not disturb the factual findings when supported by substantial evidence unless the chancellor "abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." Biglane v. Under the Hill Corp., 949 So.2d 9, 13-14(¶ 17) (Miss.2007) (quoting Cummings v. Benderman, 681 So.2d 97, 100 (Miss.1996)). Questions concerning the construction of a contract are questions of law and are reviewed de novo. Ferrara v. Walters, 919 So.2d 876, 881(¶ 9) (Miss. 2005).
I. WHETHER THE CHANCELLOR ERRED BY NOT REQUIRING SPECIFIC PERFORMANCE ON THE CONTRACT BY THE SELLER.
¶ 7. Specific performance is an appropriate remedy in matters relating to tracts of real property because of the unique nature of real estate. Van Etten v. Johnson (In re Estate of Pickett), 879 So.2d 467, 471(¶ 12) (Miss.Ct.App.2004). Pickett is distinguished from the case at issue here as the buyer in Pickett was ready, willing, and able to perform; however the seller had a temporary impossibility dealing with probate. "A party cannot obtain a decree for specific performance, without he shows a compliance, or readiness to comply with his part of the contract[.]" Tyler v. McCardle, 17 Miss. (9 S. & M.) 230, 244 (1848). Gunn argues that she tendered performance and, therefore, equity demands specific performance. We find, however, that Gunn did not tender performance during the term of the contract. After the extended date for closing had passed, Gunn obtained a loan approval which was contingent upon clear title being obtained; at no time did Gunn have the funds in hand to purchase the property. It was only after the extended date for closing had passed that title work on the loan was completed and Gunn learned that the property was titled to Henry Heggins. "Where all or part of the performances to be exchanged under an exchange of promises are due simultaneously, it is a condition *591 of each party's duties to render such performance that the other party either render or, with manifested present ability to do so, offer performance of his part of the simultaneous exchange." Restatement (Second) of Contracts, § 238. However, when it is too late for either party to make an offer to perform, both parties are discharged by the non-occurrence of a condition. Id.
¶ 8. Gunn asserts that the chancellor should have ordered Heggins to perform under the terms of the contract, even though Gunn had no financing in place to purchase the land and building. Her reasoning for this argument is that Heggins was also unable to perform as she did not have merchantable title. "The general rule in interpreting contracts is that the court will look only to the `four corners' of the instrument to ascertain and give effect to the intention of the parties." Robinson v. Martel Enterprises, Inc., 337 So.2d 698, 701 (Miss.1976). "[A] contract to sell and convey real estate ordinarily requires a conveyance of the fee simple title which is free and clear of all liens and encumbrances, unless restricted by other provisions of the contract." Ferrara, 919 So.2d at 883(¶ 17). When a seller agrees to convey property by warranty deed, he warrants that the title conveyed is without defect, i.e., the title is clear and marketable. Id. at (¶ 18). The burden of proof is upon a seller to show beyond a reasonable doubt that there is no defect in title that would render the title unmerchantable. Barber Pure Milk Co. v. Goldin, 218 So.2d 409, 412 (Miss.1969). Regarding title, the contract in this case stated,
The seller is to furnish Warranty Deed and certificate of title to date of closing sale from reputable attorney. Reasonable time shall be allowed for examination of title. Should examination of title reveal defects which can be cured, the Seller hereby obligates himself (themselves) to cure same as expeditiously as possible and to execute and tender Warranty Deed in accordance with the terms hereof.
¶ 9. In our case, neither party was able to perform on the closing dates, although Heggins disputes this in her brief. John Heggins testified that Woods was instructed to open Henry Heggins's estate in January 2005. Woods stated that John expressed doubt that the purchase of the land would occur so Woods did not feel there was any urgency to probate the estate. Woods also stated that it was not unusual to admit a will to probate and a petition to approve the sale of assets of the estate simultaneously. Therefore, Heggins claims that, had Gunn obtained the financing, the petition to probate the will and obtain clear and marketable title was a simple judicial procedure which could have easily been taken care of prior to closing. The chancellor agreed and found that Heggins had merchantable title to the property at issue, despite the fact the estate had not been probated prior to the date of the contract. The chancery court reasoned that the property vested in Heggins upon Henry Heggins's death and she acted "within her capacity as sole devisee in entering the contract to sell the property."[5] While a deceased's real property vests immediately at death in his heirs or devisees, "whether by intestate death and succession or by last will and testament," In re Estate of McRight, 766 So.2d 48, 49(¶ 10) (Miss.Ct.App.2000) (citing Beach v. State, 178 Miss. 336, 173 So. 429, 430 (1937)), we do not agree that the heirs or devisees have merchantable title. Our *592 courts have long held that a will not probated is ineffectual as an instrument of title. Virginia Trust Co. v. Buford, 123 Miss. 572, 595, 86 So. 356, 357 (1920). Good title is not merely a title valid in fact, but a marketable title, which may be sold or mortgaged. Union & Planters' Bank & Trust Co. v. Corley, 161 Miss. 282, 312, 132 So. 78, 79 (1931). Although it may have been a simple judicial procedure to probate and cure title to the property, the fact remains that Heggins never did so during the contractual period. This failure constituted a defect in the title. She never obtained merchantable title as of March 23, 2005, and, like Gunn, never tendered performance under the agreement.
¶ 10. While we subscribe to Gunn's assertion that Heggins did not possess merchantable title during the contract period, we cannot accept her assertion that specific performance of the contract is warranted. We find there is no indication that a valid contract existed between the parties after the final closing date of March 23, 2005, and a more detailed analysis of this finding immediately follows. Additionally, Gunn has never tendered performance under the contract, making specific performance an inappropriate remedy. "One party cannot maintain an action [for specific performance] against the other without showing performance or a tender of performance on his part." Marshall County v. Callahan, 130 Miss. 271, 286, 94 So. 5, 6 (1922). We find that the chancellor did not err in denying specific performance of the contract at issue.
II. WHETHER THE CHANCELLOR ERRED IN FINDING TIME WAS "OF THE ESSENCE" IN THE CONTRACT BETWEEN THE PARTIES.
¶ 11. As part of her argument that the court should require Heggins to convey the property to her, even after the expiration of the extended contract term, Gunn contends that there was no clear intent or notice by Heggins that time was of the essence in the performance of the contract. To regard a contract as "of the essence," one of two conditions must be satisfied: either the contract must expressly state that time is of the essence or there must be a clear indication that the parties intended for time to be of the essence. Ferrara, 919 So.2d at 885(¶ 25). In the absence of either condition, time will not ordinarily be considered of the essence in contract performance. Id. at (¶ 24).
¶ 12. In this case, time was not expressly stated to be of the essence; therefore, we must look to see if there is a clear indication that the parties intended it to be. Gunn argues that the delay in probating Henry Heggins's will is evidence that there was no real urgency by Heggins to complete the purchase. Gunn also states John's assertion, that he told Drake the money would be forfeited if Gunn did not obtain financing, was "misplaced" and violated the statute of frauds. We disagree. The contract explicitly states that the earnest money could be forfeited and used as a basis for liquidated damages; an issue we will address later in greater detail.
¶ 13. The attorney for Gunn, Bost, asked Heggins and her son, John, for signed confirmation to further extend the closing date of the contract. This fact demonstrates that Gunn and/or her representative, Drake, understood that time was an issue, and the contract had a time limitation for performance. Heggins also notes that Drake's payment of additional money to extend the closing date shows Gunn was concerned about obtaining financing quickly in order to complete the purchase by the closing date. When parties to a contract enter into a new agreement *593 extending the time for performance of the contract, this is evidence that they consider time to be material. Enclave, Inc. v. Resolution Trust Corp., 986 F.2d 131, 133 (5th Cir.1993).
¶ 14. A contract which specifies the period of its duration terminates on the expiration of such period. 17A Am.Jur.2d Contracts § 530 (2004). The contract at issue had a clearly defined closing date, and both parties agreed that the additional monetary consideration was for the purpose of extending the original closing date to March 23, 2005 so that Gunn could have more time to obtain financing. We find this strong evidence that Gunn was aware that she needed to perform under the contract within the dates indicated. We find no error in the chancellor's ruling in this regard.
III. WHETHER THE CHANCELLOR ERRED IN NOT FINDING THE SELLER LIABLE FOR DAMAGES.
¶ 15. Gunn maintains that Heggins's failure to perform under the contract resulted in monetary damages, including the loss of financing in the amount of $157,250, the loan amount approved for Fred Clark.[6] She also states that additional damages are owed which include the loss of contents of the building originally included in the contract, valued at approximately $40,000, and substantial attorney's fees and court costs. We agree with the chancellor that Gunn is not entitled to compensatory damages; however, we find that she is entitled to recover her earnest money.
¶ 16. When a duty to render performance is conditioned on the other party's performance or readiness to perform, the duty to pay damages is discharged by the failure of performance by the contract purchasers. Daybreak Constr. Specialties, Inc. v. Saghatoleslami, 712 P.2d 1028, 1032 (Colo.Ct.App.1985). In Daybreak, which is analogous to this case, there was a bilateral contract which contained mutual promises to perform. A developer entered into contingent contracts for the purchase of condominiums with the contract purchasers, who paid earnest money and who were obligated under the contract to obtain loan financing within thirty days of the execution of the agreement. The developer ran into financing issues, and the property was foreclosed. The court in Daybreak found that although the developer was in default, none of the purchasers had obtained the necessary financing under the terms of the agreement and, as a result, were not entitled to damages. They were, however, entitled to a refund of their earnest money. Each party's duty to render performance was conditioned on the other party's performance or readiness to perform; therefore, the developer's duty to pay damages was discharged by the failure of performance by the contract purchasers to obtain their loan financing.
¶ 17. In the case before us, as in Daybreak, we find that neither of the parties was ready to perform under the contract and, therefore, neither is entitled to damages. "Every breach of contract gives the injured party a right to damages against the party in breach, unless the contract is not enforceable against that party." Restatement (Second) of Contracts, § 346. Accordingly, Gunn is not entitled to compensatory damages from Heggins, nor is Heggins entitled to retain the earnest money paid by Gunn. However, while Gunn did not per se request the refund of the earnest money, Heggin's lack of merchantable title warrants the return *594 of the money based on the terms of the contract.
¶ 18. Earnest money is considered liquidated damages, and "the only grounds for such a recovery are the unwillingness or inability of a vendor to convey according to contract, or a mutual abandonment of the contract." Vanlandingham v. Jenkins, 207 Miss. 882, 891, 43 So.2d 578, 581 (1949) (quoting Sims v. Hutchins, 16 Miss. 328 (1847)). The contract stated:
[I]f the title is merchantable, this deposit is to apply on the cash payment. If the title is not merchantable, the Seller is to return the Purchaser the earnest money, in the event the title is found to be merchantable and the Purchaser fails to carry out and perform the terms of this agreement, he shall forfeit the above mentioned earnest money as liquid damages for such failure or refusal, and the earnest money so forfeited shall be divided equally between the seller and the agent.
If a seller does not avoid the contract and is both able and willing to perform, the buyer cannot recover what he has paid. Vanlandingham, 207 Miss. at 892, 43 So.2d at 581. However, the unwillingness or inability of the vendor to convey according to contract, or a mutual abandonment of the contract, are grounds for recovery of earnest money. Coats v. Taylor, 332 So.2d 417, 419 (Miss.1976). Heggins was unable to perform under the contract as she did not have merchantable title to the property on either closing date. Therefore, under the terms of the agreement, Heggins is obligated to return Gunn's earnest money deposit of $10,000.
¶ 19. As to Gunn's request for attorney's fees and court costs, we apply the abuse of discretion standard and note that such awards "must be supported by credible evidence." Miss. Power & Light Co. v. Cook, 832 So.2d 474, 486(¶ 39) (Miss. 2002). "Absent contractual provision or statutory authority, attorney's fees may not be awarded as damages in a case unless punitive damages are proper." Prime Rx, LLC v. McKendree, Inc., 917 So.2d 791, 798(¶ 25) (Miss.2005) (quoting Mauck v. Columbus Hotel Co., 741 So.2d 259, 269(¶ 31) (Miss.1999)). Based on our review of the chancellor's findings, we find no error, and the claim for attorney's fees is without merit.
IV. WHETHER THE CHANCELLOR ERRED IN DENYING GUNN INJUNCTIVE RELIEF.
¶ 20. The chancellor denied Gunn permanent injunctive relief to prevent Heggins from removing the contents of the building. Gunn argues that this denial defeats the purpose of Mississippi Rule of Civil Procedure 65, which is to prevent a seller from "encumbering, selling, bargaining, granting, conveying, or giving away the contents and building that is the subject of the dispute before the court." As we have already stated, the contract between the parties no longer existed after March 23, 2005. Thus, Heggins had every right to dispose of the property at question. We find no error in the chancellor's denial of injunctive relief.

CONCLUSION
¶ 21. Neither party to the agreement was ready, willing and able to perform the duties under the contract on either closing date, and the contract terminated as of March 24, 2005. We affirm the chancellor's ruling that time was of the essence in the agreement and that no specific performance or permanent injunctive relief was warranted. However, on the issue of damages, we reverse and remand the judgment of the chancery court as Heggins was unable to produce clear, merchantable *595 title as of the closing dates and, as such, owes Gunn a refund of the $10,000 in earnest money.
¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY DENYING SPECIFIC PERFORMANCE AND INJUNCTIVE RELIEF FOR THE APPELLANT IS AFFIRMED. THE JUDGMENT DENYING APPELLANT DAMAGES IS REVERSED AND REMANDED. ALL COSTS FOR THIS APPEAL ARE ASSESSED IN EQUAL PARTS TO THE APPELLANT AND THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] At the time of Henry Heggins death, there was a lien for approximately $46,000 on the property held by River Hills Bank. John Heggins testified that the lien was paid prior to entering into the contract with Gunn.
[2] Although the banker had no contact with Gunn or Drake, Clark was acting as a "silent partner" to help Drake. Clark was approved for the loan in either late March or early April of 2005.
[3] The testimony by John Heggins was that Drake observed a buyer looking at the property and came to John's office shortly after the buyer left and Drake was very upset.
[4] Notice to creditors was published in The Vicksburg Post May 1, May 8, and May 15, 2005.
[5] In addition, the chancellor noted that all of Heggins's children agreed she should receive the entire estate and there was no indication that anyone would contest the will.
[6] On June 6, 2005, Clark sent a letter to Drake withdrawing his offer of financing due to the time involved in resolving the "business venture."