MAXWELL, J.,
for the Court:
¶ 1. Garrett Prestenbach Jr. seeks specific performance of an option contract to purchase Gerald Collins’s property. The problem is, at the time Prestenbach claims he validly exercised his option, he indisputably lacked the financing to purchase the property. So even if Prestenbach’s option-to-purchase contract had become a contract to sell, Prestenbach is not entitled to the remedy of specific performance because he cannot show he was “ready, willing, and able” to purchase the property *556 within a reasonable time following the option period. We thus affirm the chancellor’s grant of summary judgment in Collins’s favor.
Background Facts and Procedural History
¶ 2. Collins owns approximately 200 acres of farmland in Marion County, Mississippi, which he wants to sell. In the summer of 2011, he approached Presten-bach, whose mother owns property near Collins’s. Prestenbach expressed interest in buying 150 acres, if he could obtain a low-interest loan through the United States Department of Agriculture (USDA).
¶ 3. To enable Prestenbach to apply for a USDA loan, the two men signed a USDA form option-to-purchase contract on September 15, 2011.[1] Under the terms of the USDA form option, Prestenbach would have a one-year option to purchase from Collins 150 acres for $500,000. This option would be irrevocable for the first three months and, after that, terminable upon ten days’ notice by Collins. If Presten-bach received termination notice, he could accept the offer within the ten days by giving Collins written notice of acceptance.
¶ 4. During the next three months, Pres-tenbach attempted to get approval for a $225,000 loan from the USDA,[2] while Collins continued to market his property. Collins’s efforts were met with success— another buyer offered to pay cash for the entire 200 acres. But Prestenbach’s loan application got tied up in red tape. In late October, Collins told Prestenbach about the other buyer. Collins insisted it had always been part of their agreement that Collins could keep looking for another buyer, despite the form language about the option being “irrevocable” for three months. According to Collins and his attorney, Prestenbach acknowledged to them that he was having trouble getting his government loan approved.[3] Collins further attested that Prestenbach told him to go ahead and sell to another buyer.
¶ 5. Prestenbach strongly refutes this assertion. In fact, in mid-November Pres-tenbach recorded the option to prevent Collins from selling his property to the other interested buyer. Collins responded by sending a letter notifying Prestenbach of his intent to terminate the option contract on December 15 (exactly three months from when the USDA form had been signed) or ten days after receipt of the termination letter, whichever was later.
¶ 6. Prestenbach received the letter on December 8, 2011. On December 16, 2011, he gave Collins written notice that he had “received approval from the Government for [his] loan” and, thus, was exercising his option to purchase Collins’s property. But *557 Prestenbaeh had not yet received approval. What had actually happened on December 16 was that Prestenbaeh received an email from the USDA informing him that “barring any changes to the current data,” Prestenbach’s loan would be approved the next week — and only if Pres-tenbach’s wife signed the loan documents.
¶ 7. The following week, the USDA did indeed approve Prestenbach’s loan “subject to the availability of funds.” The December 22 letter made clear that “funds [were] not immediately available” to loan Prestenbaeh $225,000. (Emphasis added). Further, if either (a) Prestenbach’s financial condition changed significantly or (b) more than ninety days passed before funds became available, Prestenbaeh would have to send updated financial information, which could result in him no longer being eligible for the loan.
¶ 8. While they dispute what happened following December 22, 2011, both men agree that no closing date was ever set. In Collins’s view, Prestenbaeh had not validly exercised the option because he failed to obtain a loan within the time allowed. But as Prestenbaeh sees it, he was not required to have the money to purchase during the option period — he just had to give notice that he was willing to purchase the property for the option price, which he did.
¶ 9. On January 31, 2012, Collins sued Prestenbaeh[4] to confirm and quiet the title to his property. In February 2012, Pres-tenbach filed a counterclaim seeking specific performance under the option contract. Soon after, both parties filed cross motions for summary judgment. Presten-bach, in his summary-judgment motion, asserted that the undisputed facts showed he was entitled as a matter of law to specific performance under the option. And Collins, in his summary-judgment motion, asserted that the undisputed facts showed he was entitled to removal of the cloud of title created ■ when Prestenbaeh recorded the unenforceable option.
¶ 10. The chancellor found that, assuming that the option to purchase was a valid, integrated agreement, Prestenbaeh was not entitled to specific performance because it was undisputed that he did not have the funding to purchase Collins’s land.[5] Thus, the chancellor entered summary judgment in Collins’s favor on both claims — denying Prestenbach’s claim for specific performance and granting Collins’s claim to remove the cloud of title.
¶ 11. After an unsuccessful motion to reconsider, Prestenbaeh timely appealed.
Discussion
¶ 12. We review the chancellor’s grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. Bradley v. Kelley Bros. *558 Contractors, Inc., 117 So.3d 331, 336 (¶ 21) (Miss.Ct.App.2013) (citation omitted). In doing so, we ask the same question as the trial judge — has the moving party shown that there are no material factual disputes and that he is entitled to a judgment as a matter of law. Id.
¶ 13. Here, Prestenbach appeals in his capacity as both the moving and nonmov-ing party. As the moving party, he suggests the chancellor erred by not granting him summary judgment on his specific-performance claim because the undisputed facts show he is entitled to specific performance as a matter of law. But as the nonmoving party, he alternatively asserts the chancellor erred by granting summary judgment to Collins, because the judgment was based on the improper resolution of disputed material facts.
¶ 14. After de novo review, we agree with the chancellor that there were no material facts in dispute. We also agree that the undisputed facts show Collins, not Prestenbach, was entitled to a judgment as a matter of law. Because it would have been Prestenbach’s burden at trial to prove he was entitled to specific performance, it was Prestenbach’s burden at the summary-judgment stage to produce evidence supporting his specific-performance claim. See Karpinsky v. Am. Nat’l Ins., 109 So.3d 84, 88 (¶ 11) (Miss.2011). But Prestenbach did not present any evidence that he would have been ready, willing, and able to go through with the purchase when he sent Collins written notice that he was exercising the option.
¶ 15. Because equity does not demand Collins be forced to sell his property to Prestenbach when the undisputed evidence shows Prestenbach could not have purchased the property anyway, we affirm the chancellor’s grant of summary judgment in Collins’s favor.

I. Remedy of Specific Performance

¶ 16. The holder of an option may be granted specific performance “despite the fact that until acceptance there is no contract which the [option holder] could have been compelled to perform.”.[6] 81A C.J.S. Specific Performance § 45 (2004). But “because a valid contract is a prerequisite to specific performance, a holder of an option must comply with the terms regarding the exercise of the option to be eligible for specific performance.” Id.; see also Creely v. Hosemann, 910 So.2d 512 (Miss.2005) (holding an option holder was entitled to specific performance because he had complied with the terms regarding the exercise of the option). Further, to be eligible for specific performance, the option must contain “all the material and essential terms and leave none to be agreed upon as a result of future negotiations.” 81A C.J.S. Specific Performance § 45 (citing Estate of Smith v. Samuels, 822 So.2d 366, 369 (¶ 7) (Miss.Ct.App.2002)). And “the contract must be fair in all of its parts, based upon an adequate consideration, and capable of being performed.” Id. (emphasis added).
¶ 17. This court has found specific performance to be “a ‘particularly appropriate *559 remedy in matters pertaining to a breach of a real estate contract, because of real estate’s unique nature.” Houston v. Willis, 24 So.3d 412, 418 (¶ 19) (Miss.Ct. App.2009) (quoting In re Estate of Pickett, 879 So.2d 467, 471 (¶ 12) (Miss.Ct.App. 2004)). But the availability of this “particularly appropriate remedy” depends on the requesting party’s readiness, willingness, and ability to perform. See id. (finding specific performance was “especially” appropriate because plaintiff stood “ready, willing, and able to perform his part of the contract”). “A party cannot obtain a decree for specific performance, without [showing] a compliance, or readiness to comply with his part of the contract.” Gunn v. Heggins, 964 So.2d 586, 590 (¶ 7) (Miss.Ct.App.2007) (emphasis added) (quoting Tyler v. McCardle, 17 Miss. (9 S. & M.) 280, 244 (1848)).
¶ 18. In Gunn, this court found the would-be purchaser was not entitled to specific performance because “at no time [during the period to close the real estate transaction] did [he] have the funds in hand to purchase the property.” Id.; see also Lamanna v. Wing Yuen Realty, Inc., 283 A.D.2d 165, 166, 724 N.Y.S.2d 54 (N.Y.App.Div.2001) (finding a claim for specific performance by the holder of an option to purchase real estate could not survive summary judgment because the option holder “failed to demonstrate that he possessed, at any time prior to the commencement of this action, the financial wherewithal to complete the purchase of the building in question”). When a party was not ready, willing, and able to tender performance, equity does not demand specific performance be ordered. Gunn, 964 So.2d at 590 (¶ 7).

II. Prestenbach’s Inability to Tender Performance

¶ 19. While Prestenbach claims the fact his government loan had not come through was irrelevant, we agree with the chancellor that this fact is fatal to Presten-bach’s specific-performance claim.
¶ 20. Prestenbach argues the chancellor improperly considered that at no time during December 2011 could Prestenbach have tendered performance — i.e., paid $500,000 for the property. Prestenbach asserts that, under the USDA form contract, he agreed to tender the purchase price at the time of closing, not at the time of exercising the option. All that the USDA form contract required for him to validly exercise the option was to mail, telegraph, or hand deliver Collins a written notice of acceptance. And because he did this, he is entitled to specific performance.
¶ 21. Prestenbach relies on two options cases in which the supreme court held that tender of performance — i.e., payment of the purchase price — was not necessary to exercise an option. Creely, 910 So.2d at 519 (¶ 29); Busching v. Griffin, 542 So.2d 860, 864-65 (Miss.1989). Instead, “[t]he holder of an option is entitled to specific performance of the optionor’s duty to convey, so long as the holder is willing to pay the option price.” Creely, 910 So.2d at 519 (¶ 29).
¶ 22. But in Creely, the ability of the purchaser, Secretary of State Delbert Ho-semann, to tender performance was not at issue. In fact, Hosemann had actually tendered payment, which the seller refused to accept. Id. at 515 (¶ 8). The seller claimed Hosemann had not validly exercised the option because the sale had not been closed during the time period to exercise the option. But the supreme court found that the contract only required Ho-semann to accept the offer during the specified period. Because the option did not set a closing date, “the date of closing” — and the date Hosemann had to tender performance — “was to be within a reasonable time from the date of exercising the option.” Id. at 520 (¶ 32). Because *560 the supreme court found Hosemann’s tender of performance was within a reasonable time, the court found he was entitled to specific performance.
¶ 23. Similarly, in Busching, there was no question the purchaser was able to tender performance. And the “so long as the [option] holder is willing to pay” language that Prestenbach latches on to should be considered in its context:
The holder of an option is entitled to specific performance of the optionor’s duty to convey, so long as the holder is willing to pay the option price. Harold Busching testified that he stands ready, willing and able to deliver $50,000.00 cash to Griffin — and that he has been so since July of 1983. This suggests strongly that he is entitled to a decree that Griffin execute and deliver a proper instrument of conveyance.
Busching, 542 So.2d at 864 (emphasis added and internal citation omitted).
¶ 24. In contrast to the option holders in Creely and Busching, Prestenbach was not “willing” to exercise the option on December 16, 2011. Prestenbach acknowledges his willingness to pay $500,000 for 150 acres was contingent on the USDA actually approving his loan the following week and the USDA actually having money to loan him. So his acceptance of Collins’s offer to sell the 150 acres for $500,000 was conditional, depending on future events that may or may not have happened. For if the opposite had happened — Prestenbach’s loan had not been approved or the funds never became available — and it was Collins who was clamoring for specific performance, we seriously doubt Prestenbach would concede he was obligated to purchase Collins’s property for $500,000 despite being financially unable to do so.
¶ 25. Because Prestenbach’s lack of financing to cover the purchase price meant he only gave an aspirational acceptance of Collins’s offer during the time the option was still open, the chancellor did not err in determining that Prestenbach had not validly exercised the option before it terminated. Further, even if Prestenbach could be considered to have exercised the option, he is still not entitled to specific performance because he cannot show that, within a reasonable time following the end of the option period, he stood ready, willing, and able to close on the property. See Gunn, 964 So.2d at 590 (¶ 7). Thus, we affirm the chancellor’s judgment in favor of Collins on both the specific-performance and cloud-of-title claims.
¶ 26. THE JUDGMENT OF THE MARION COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. The option specifically stated it was “given to enable [Prestenbach] to obtain a loan made by the United States ... for the purchase of [Collins's] property. It is agreed that [Pres-tenbach’s] efforts to obtain a loan constitute a part of the consideration for this option and any downpayment will be refunded if the loan cannot be processed by the Government.”

. The maximum amount available under the USDA's loan program was $300,000. Because Prestenbach was only going to seek a $225,000 loan from the government, he and Collins also signed a second terms-of-financing agreement. In this agreement, Collins agreed to self-finance $250,000 of the purchase price. The term of Collins’s loan to Prestenbach would be thirty-five years, at an interest rate of 4.5%. Prestenbach would not have to make any payments for the first five years, but interest would start accruing after the first year.

.Collins asserts that Prestenbach’s loan application encountered problems because Pres-tenbach failed to make a good-faith effort to apply for private financing first — a precondition to apply for a USDA loan — and made misrepresentations about his farming income.

. Collins also sued Prestenbach's wife, Irene. But Irene was not a party to either the USDA option-to-purchase contract or the terms-of-financing agreement. So this opinion only refers to Prestenbaeh as Collins's adversarial party, even though Irene was also a named defendant / counter-plaintiff below and is an appellant here.

. The chancellor went on to find, alternatively, that the option to purchase was not a valid, integrated agreement because it left out the agreements (a) that Collins was free to market his property to other purchasers and (b) that Prestenbaeh would sell his mother’s property to generate the funds to pay back Collins for self-financing $250,000 of the purchase price. Prestenbaeh raises several issues related specifically to this alternative finding, such as violation of the parole-evidence rule and improper resolution of disputed facts at the summary-judgment phase. But since we find Collins was entitled to summary judgment even if the option to purchase was valid, we need not address these other issues.

. An option to purchase real property is a contractual obligation on the property owner to sell his property if the option holder accepts the offer — i.e., "exercises the option”— within the specified time period or, if no time period is specified, a reasonable time. See Duke v. Whatley, 580 So.2d 1267, 1272 (Miss.1991) (citing Williston on Contracts § 1441A (Jaeger, 3d ed.1968)). An option is a unilateral contract because only the property owner is contractually bound to sell. The holder of the option is not bound to exercise the option. Id. But if the holder of the option does exercise his option; a bilateral contract is formed — the owner is obligated to sell and the option holder to buy in accordance with the terms of the option. Id.